Chandler S. Knight, J.
This is a pretrial evidentiary hearing held commencing September 28, 1964, in the county courtroom in the Rensselaer County Courthouse, Troy, New York, pursuant to an order of this court made on September 24, 1964, for the court to determine the voluntariness of statements, oral or written, made by the defendant, Richard M. La Belle, on December 3 and 4,1963.
No such proceeding has previously been held in this State and consequently there are no precedents to follow.
The defendant urges that the defendant’s statements were the product of coercion resulting from pre-arraignment detention and interrogation, the taking of a lie detector test, delay in arraignment and alleged unlawful detention, thereby rendering his statements involuntary and inadmissible.
The evidence shows that the defendant was taken into custody about 10:15 o’clock a.m. on December 3, 1963, pursuant to a warrant issued by the Police Court of Troy, New York, on a charge of third degree assault, and transported to the State Police headquarters at East G-reenbush, in Rensselaer County, arriving there a few minutes before 11:00 o ’clock a.m. ; that the defendant was immediately informed of his right to obtain a lawyer and he replied that he did not need a lawyer because he had done nothing; that he was also advised that he did not have to answer questions and if he did his answers could be used against him in a criminal proceeding; that he was interrogated from about 11:30 o’clock a.m. until 1:00 o’clock p.m. by one officer, when he was offered coffee and lunch; that he accepted the coffee; that he was interrogated again from 2:00 o’clock p.m. until 3:15 o’clock p.m. or 3:30 o’clock p.m. by the same officer; that the total time of interrogation of the defendant was about three hours; that he told his interrogator that Rose Mary Snay was raped twice, beaten to death, and her body then placed in an automobile and driven to a culvert where her body was thrown into a creek and that he had witnessed all of those events; that the defendant was then asked if he would submit to a lie detector test and he said he would; that the defendant was allowed to rest from about 4:00 o’clock p.m. to 8:00 o’clock p.m., during which time he was not interrogated; that at 8:00 o’clock p.m. he was introduced to two members of the State Police scientific laboratory and was told that those two men would conduct the lie detector test; that he was again informed of his constitutional rights; that the test was conducted at intervals between about 8:30 o’clock p.m. until about 10:20 o’clock p.m. ; that the defendant was not told the result of the lie detector test; that shortly before 11:00 o’clock p,m, the defendant stated to an officer that *329 he was present when Bose Mary Snay was raped and killed and that he wanted to make a statement; that between 11:00 o’clock p.m. and 11:20 o ’clock p.m. or 11:30 o ’clock p.m. he orally told the events which occurred, and the places he went from the time Bose Mary Snay was picked up in an automobile, until her body was thrown into a creek; that between 11:30 o’clock p.m. and about 2:30 o’clock a.m. on December 4, 1963, the defendant dictated a narrative statement which was typewritten as he gave it and when completed he initialed corrections and then signed and swore to it.
While a lie detector instrument is not recognized in this State as effective for the purpose of determining the truth, and the result of the test is inadmissible, the mere fact that the defendant took such test does not necessarily render involuntary a statement subsequently given by a defendant voluntarily and without coercion, compulsion, promises or deception practiced on the defendant.
At this hearing there was no evidence that promises were made or deception practiced on the defendant by the operator of the instrument or by anyone else, or that violence, or threats or gestures of violence were made by anyone before, during or after the test. The record is void of any evidence that the taking of the lie detector test acted as a compulsion for the defendant’s subsequent statement or that he was mentally or physically coerced or induced to make it or that his will was overborne or affected in any way.
The written statement was not made in an atmosphere of haste or pressure but rather it was typed out as it was dictated by the defendant in a room with only one other person, who was a member of the State Police, and was read and corrected by the defendant and then signed by him, all in a period of about two and one-half or three hours.
After the test and when he said he wanted to give a statement he was again advised of his constitutional rights and subsequently stated in the first paragraph of his statement 111 have been told I need not make this statement and I have been advised of constitutional rights against incrimination and I do so of my own free will and with full knowledge that what I say may be used against me in a criminal action ’ ’.
The effect of the defendant’s detention, interrogation and test did not attain the result of bringing forth a confession by the defendant that he committed the crime of which he is charged.
On the contrary, following the test the defendant made oral and written statements denying that he committed the rape or slaying of Bose Mary Snay. Pie maintained then as he did *330 before the test and before giving the written statement that he was present and witnessed those events happen but denied he committed the acts and that he knew who did commit the rape and slaying of Bose Mary Snay.
His statement is not a confession that he raped or killed the victim. His attorney on previous motions has described the statement as exculpatory.
If there were a purpose to induce the defendant to admit guilt and to elicit a confession it utterly failed.
A confession or a statement by a defendant is not involuntary solely because it was procured during a delay in arraignment or unlawful detention. No finding is made whether there was unnecessary delay in arraignment or that the defendant was unlawfully detained. This proceeding is only concerned with the voluntariness of the statement of the defendant Bichard M. La Belle.
It is my conclusion that the oral and written statements made by the defendant, Bichard M. La Belle, on December 3 and 4, 1963, beyond a reasonable doubt were made freely, voluntarily, uncoerced and without duress, mental or physical, or compulsion of any sort, and were not made under the influence of fear, produced by threats, or upon stipulation of the District Attorney that he would not be prosecuted therefor, and that said statements were voluntarily made and that no constitutional right of the defendant was violated.
Since this decision is made pretrial the Clerk of this court is instructed to incorporate it in the minutes of the trial as the findings and conclusions of the court on the voluntariness of the statement of the defendant, Bichard M. La Belle, and said findings and conclusions shall not be made known to the jury to whom the question of voluntariness will be submitted on the trial for its ultimate determination.
it is ordered, that there shall be no publication of this decision or any part of it prior to the case being submitted to the jury or until the indictment of the defendant be disposed of.
It is recommended that legislation be enacted so that uniform proceedings may be followed to meet the situation created by the decision of the United States Supreme Court in Jackson v. Denno (378 U. S. 368).